[Cite as *Hubbard Family Trust v. TNT Land Holdings, L.L.C.*, 2014-Ohio-772.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

The Hubbard Family Trust,      :
Joseph Hubbard, Trustee, et al.,      :      Case No. 12CA833
     :
     Plaintiffs-Appellees/Cross-Appellants/    :
     Cross-Appellees,      :      <u>DECISION AND</u>
     :      <u>JUDGMENT ENTRY</u>
     v.      :
     :
TNT Land Holdings, LLC, et al.,      :
     :
     Defendants-Appellants,      :
     :      **RELEASED: 02/25/2014**
     and      :
     :
Angela Shanks, et al.,      :
     :
     Defendants/Cross-Appellees/      :
     Cross-Appellants.      :

_____

APPEARANCES:

Stanley C. Bender, Law Offices of Stanley C. Bender, Portsmouth, Ohio, and Thomas M. Spetnagel, Chillicothe, Ohio, for Appellants TNT Land Holdings, LLC, and Marie Hoover.

Michael P. McNamee and Gregory B. O'Connor, McNamee & McNamee, PLL, Beavercreek, Ohio, for Appellees/Cross-Appellants/Cross-Appellees, The Hubbard Family Trust, Joseph Hubbard, Trustee.

Shane A. Tieman, Portsmouth, Ohio, for Defendants/Cross-Appellees/Cross-Appellants Angela Shanks and Acceleration Enterprises, LLC, dba Realtec Real Estate.

_____

BROWN, J.

{¶ 1} TNT Land Holdings, LLC ("TNT"), and Marie Hoover ("Hoover")

(sometimes referred to collectively as "TNT"), defendants-appellants/cross-appellees

appeal the judgment of the Pike County Court of Common Pleas, in which the court,

pursuant to a jury verdict, entered judgment in favor of and awarded damages to The

Hubbard Family Trust, Joseph Hubbard, Trustee ("Trust"), and Joseph W. Hubbard ("Hubbard") (sometimes collectively referred to as "Hubbard"), plaintiffs-appellees/cross-appellants. Angela Shanks and Acceleration Enterprises, LLC, DBA Realtec Real Estate (sometimes collectively referred to as "Realtec"), defendants-appellees/cross-appellants, have filed an appeal of the trial court's judgment. Hubbard also appeals the trial court's judgment.

{¶ 2}  Hoover, along with her ex-husband, bought the subject property, a single-family home on Lake White in Waverly, Ohio, in 1994. They made significant additions to the original "cottage." Hoover became the owner of the home upon termination of the marriage. She transferred the home to TNT in 2000 and her then husband, Tracy Hoover, transferred any right he had in the home to TNT as well. Hoover is a member of TNT.

{¶ 3}  Shanks is a real estate agent and broker. In 2006, Shanks began working for Acceleration Enterprises, LLC, which does business as Realtec. In March 2007, TNT and Shanks listed the subject home for TNT for $325,000. TNT accepted an offer for $310,000 from a buyer, the Marions. The Marions conducted a home inspection, returned to Shanks about two hours later with a handwritten list of problems with the home, and then made an offer for a reduced amount. The list included issues about which the Marions were concerned, including condensation on the turret windows, settling of the doors and spiral staircase pad, and settling of the corner of the master bedroom. Shanks handwrote an addendum to the purchase contract, which included an Exhibit A ("Marion contingency addendum") that listed the defects discovered by the Marions. Shanks submitted the addendum and offer to TNT through Hoover, who rejected the offer.

{¶ 4}    Thereafter, Hoover began repair work on the home, including the repainting of the exterior, installation of retaining walls on the rear slope of the property, installation of new windows in the turret room, replacement of a concrete pad behind the turret room, and replacement of the garage floor.

{¶ 5}    On July 28, 2007, Hubbard, who was 86 years old and resided in California, was in Ohio for the weekend for a school and family reunion. Hubbard had long been interested in owning a home on Lake White, and he learned there was one currently for sale there. He and a relative, Angie Snodgrass, met Shanks at TNT's Lake White home, and Shanks pointed out several repairs that had been done. Construction work was still ongoing at the time. Hubbard obtained a key to the home and took an architect with him and inspected the property soon after the walk through with Shanks. Hubbard and his family walked through the property the next day, July 29, 2007.

{¶ 6}    On July 29, 2007, Hubbard signed a purchase agreement, agreeing to pay $320,000 for the house. An inspection addendum, which permitted Hubbard to obtain an inspection and receive credit for repairs for any problems, was included in the purchase contract, but Hubbard never obtained an inspection. Shanks dually represented Hoover and Hubbard in the transaction.

{¶ 7}    After Hubbard's purchase, his relative, Jeanetta Pixley, began living in the home in November 2007. In spring 2008, Pixley began noticing several settling problems. The deck had shifted and the sidewalk was cracked. The yard also developed a large crack. A contractor and engineer hired by Hubbard determined the land was settling and the soil was shifting down the slope toward the edge of the lake.

{¶ 8}    Hubbard believed that many of the "repairs" undertaken by Hoover prior to his purchase were actually designed to conceal the structural flaws and settling. On

October 9, 2009, Hubbard filed a complaint, alleging fraud, negligent misrepresentation, breach of contract, and unjust enrichment against Hoover and TNT; and breach of fiduciary duty, negligence, and promissory estoppel against Realtec. Hubbard also included claims against Tracy Hoover, but Hubbard dismissed those claims prior to trial. Realtec brought claims against Pixley and Snodgrass, although those are not relevant to the appeal.

{¶ 9}   All parties filed motions for summary judgment, and the trial court denied all motions except for those of Pixley and Snodgrass. A jury trial began April 30, 2012. Hubbard subsequently dismissed his claims for fraud, negligent misrepresentation, and unjust enrichment, against TNT, and its claim for promissory estoppel against Shanks.

{¶ 10}  On May 4, 2012, the jury returned verdicts against Hoover on the fraudulent concealment, fraudulent misrepresentation, and breach of contract, and against TNT on the breach of contract claim. The jury awarded Hubbard $216,337.75 in damages. The jury also returned verdicts against Realtec on the claims for breach of fiduciary duty and negligence but awarded zero damages on those claims.

{¶ 11}  After a subsequent hearing on punitive damages and attorney fees against Hoover, the same jury awarded Hubbard $68,020.11 for punitive damages and $68,020.11 for attorney fees. On May 18, 2012, the trial court filed a judgment entry journalizing the jury's verdicts. TNT and Realtec filed motions for judgment notwithstanding the verdict, which the trial court denied on July 18, 2012. TNT and Realtec have filed appeals, and Hubbard has filed a cross-appeal.

{¶ 12}  TNT asserts the following assignments of error:

> I. THE TRIAL COURT ERRED IN DENYING APPELLANTS'
> MOTION FOR SUMMARY JUDGMENT, DIRECTED

VERDICT, AND JUDGMENT NOTWITHSTANDING THE VERDICT.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING MARIE HOOVER PERSONALLY LIABLE.

III. THE TRIAL COURT ERRED IN ALLOWING APPELLEES' EXPERT WITNESS TO EXPRESS AN OPINION AS TO THE ULTIMATE ISSUE OF WHETHER APPELLANTS KNOWINGLY MISREPRESENTED OR CONCEALED DEFECTS IN THE PROPERTY.

IV. THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY.

V. THE JURY'S VERDICT AGAINST APPELLANTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Realtec asserts the following assignments of error:

[I.] THE TRIAL COURT ERRED BY DENYING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ANGELA SHANKS/REALTEC.

[II.] THE TRIAL COURT ERRED BY DENYING DEFENDANT ANGELA SHANKS/REALTEC MOTION FOR DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT.

[III.] THE FINDING BY THE JURY THAT DEFENDANTS SHANKS AND REALTEC VIOLATED A FIDUCIARY DUTY AND WERE NEGLIGENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Hubbard asserts the following assignment of error:

The jury's award of zero damages against Shanks and Realtec was against the manifest weight of the evidence.

{¶ 15} TNT argues in its first assignment of error that the trial court erred when it denied its motion for summary judgment, motion for directed verdict, and motion of judgment notwithstanding the verdict. Appellate review of summary judgment motions is de novo. *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). " 'When

reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516 ¶ 11 (10th Dist.), quoting *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6.

{¶ 16} We employ a de novo standard of review in evaluating a trial court's ruling on a motion for directed verdict or judgment notwithstanding the verdict. *Whitaker v. Kear*, 123 Ohio App.3d 413, 422 (4th Dist.1997); *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-Ohio-6803 (8th Dist.). Civ.R. 50 sets forth the standard for granting a motion for a directed verdict and a motion for JNOV:

> (A) Motion for directed verdict.
>
> * * *
>
> (4) When granted on the evidence. When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to each party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
>
> * * *
>
> (B) Motion for judgment notwithstanding the verdict. Whether or not a motion to direct a verdict has been made or overruled * * * a party may move to have the verdict and any

> judgment entered thereon set aside and to have judgment
> entered in accordance with his motion; or if a verdict was not
> returned, such party, * * * may move for judgment in
> accordance with his motion. A motion for a new trial may be
> joined with this motion, or a new trial may be prayed for in
> the alternative.

{¶ 17} In *Posin v. A.B.C. Motor Court Hotel, Inc.*, 45 Ohio St.2d 271, 275 (1976),

the Supreme Court of Ohio held:

> The test to be applied by a trial court in ruling on a motion for
> judgment notwithstanding the verdict is the same test to be
> applied on a motion for a directed verdict. The evidence
> adduced at trial and the facts established by admissions in the
> pleadings and in the record must be construed most strongly
> in favor of the party against whom the motion is made, and,
> where there is substantial evidence to support his side of the
> case, upon which reasonable minds may reach different
> conclusions, the motion must be denied. Neither the weight of
> the evidence nor the credibility of the witnesses is for the
> court's determination in ruling upon either of the above
> motions.

{¶ 18} In the present case, TNT first argues that Hubbard purchased the property

subject to all its attendant flaws and defects because the purchase agreement entered into

between the parties provided that the property was being sold "as is," as well as the

application of the doctrine of caveat emptor. TNT points to the following provisions of the

contract:

> 9. INSPECTIONS: Inspections regarding the physical material
> condition and the use of the Real Estate shall be the
> responsibility of the Purchaser. Purchaser has a duty to
> conduct a reasonably diligent inspection and inquiry of the
> property. Purchaser is relying solely upon their own
> examination of the Real Estate, the Residential Property
> Disclosure, and inspections herein requested by the Purchaser
> or otherwise required for its physical condition and character,
> and not upon any representation by any Realtor who shall not
> be responsible for any defects in the Real Estate.
>
> * * *

14. MISCELLANEOUS: Purchaser has examined all property involved and in making this offer is relying solely upon such examination with reference to the condition, character and size of land and improvements and fixtures. THE SUBJECT PROPERTY IS BEING SOLD "AS IS" WITHOUT ANY WARRANTIES WHATSOEVER EXCEPT AS EXPRESSLY SET FORTH HEREIN IN WRITING.

{¶ 19} Generally, the doctrine of caveat emptor bars a real estate purchaser from seeking recovery from the seller for structural defects. As the court stated in *Layman v. Binns*, 35 Ohio St.3d 176 (1988), syllabus: "The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." (Emphasis sic.) Thus, the doctrine will not bar an action for a real estate defect if a buyer demonstrates that: (1) the complained of condition is latent or is not discoverable upon a reasonable inspection, (2) the buyer did not have an unimpeded opportunity to examine the premises, and (3) the seller acted fraudulently. The doctrine of caveat emptor does not preclude a buyer from recovery for all defects. Rather, the doctrine precludes buyers from recovering for patent, as opposed to latent, defects. *Id.* at 177.

{¶ 20} Generally, an "as is" clause in a real estate sales contract relieves the seller of any duty to disclose that the property was in a defective condition. *Kaye v. Buehrle*, 8 Ohio App.3d 381 (9th Dist.1983), paragraph one of the syllabus. An "as is" clause bars an action for "passive nondisclosure" but does not shield the seller from an "active" fraud or commission (as opposed to a fraud of omission), i.e., a misrepresentation or fraudulent concealment. *Rogers v. Hill*, 124 Ohio App.3d 468, 471 (4th Dist.1998). Thus, an "as is" clause does not protect a seller who positively misrepresents or conceals the complained

of condition. *See Eiland v. Coldwell Banker Hunter Realty*, 122 Ohio App.3d 446, 457 (8th Dist.1997). "An 'as is' clause cannot be relied on to bar a claim for fraudulent misrepresentation or fraudulent concealment." *Kaye* at paragraph two of the syllabus. Thus, while a seller may not have a duty to disclose a defective condition, the seller may not take affirmative steps to misrepresent or to conceal the condition.

{¶ 21} As indicated in the purchase agreement, Hubbard accepted the property "as is." Hubbard claims that "as is" in the present contract did not have the traditional meaning that he was taking the property in its present condition but, rather, that he was taking the property subject to the incomplete construction work, which was to stop upon his purchase of the home. He said there were things wrong with the house that he could see and was also told about that still needed to be repaired, and he accepted those things. Notwithstanding, even if the use of "as is" in the agreement was meant to be in the traditional sense of the term, we find neither the "as is" clause nor the doctrine of caveat emptor precluded Hubbard's recovery because the evidence supported a finding of fraud.

{¶ 22} TNT's arguments regarding fraudulent concealment and fraudulent misrepresentation are generally based upon the same underlying assertions. To establish a cause of action for fraudulent misrepresentation or concealment, a plaintiff must prove: (1) a representation or, when a duty to disclose exists, concealment of a fact, (2) material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *See Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus.

{¶ 23}  R.C. 5302.30 charges the director of commerce to prescribe a disclosure form that sellers of residential real property must provide to purchasers. The form is "designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred * * * and any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D). A duty of good faith is imposed on the seller, R.C. 5302.30(E)(1), though liability for non-disclosure does not apply to matters "not within the transferor's actual knowledge." R.C. 5302.30(F)(1).

{¶ 24}  A seller's response or non-response to the questions posed by the residential property disclosure form does not warrant the good condition of the property. *Schroeder v. Henness*, 2d Dist. No. 2012 CA 18, 2013-Ohio-2767. Rather, they constitute the owner's representations concerning his actual knowledge of the condition of the property in respect to the particulars specified. *Id.*

{¶ 25}  A variance between the owner's representations and the truth and fact of the matters concerned may be a basis for a claim of fraud, and the seller's duty of good faith requires him to act with an honest belief or purpose in the responses he provides. *Decaestecker v. Belluardo*, 2d Dist. No. 22218, 2008-Ohio-2077, ¶ 45. However, he is not required to speculate, and is charged only to reveal the existence of conditions within his actual knowledge. *Id.*

{¶ 26}  If a seller fails to disclose a material fact on a residential property disclosure form with the intention of misleading the buyer, and the buyer relies on the form, the seller is liable for any resulting injury. *Wallington v. Hageman*, 8th Dist. No. 94763, 2010-Ohio-6181, ¶ 18, citing *Pedone v. Demarchi*, 8th Dist. No. 88667, 2007-Ohio-6809, ¶ 31. In other words, the "as is" clause is inapplicable if the property disclosure form contains misrepresentations. *Wilfong v. Petrone*, 9th Dist. No. 26317, 2013-Ohio-2434, ¶

32. When a buyer has had the opportunity to inspect the property, however, "he is charged with knowledge of the conditions that a reasonable inspection would have disclosed." *Wallington*; *Pedone* at ¶ 33.

{¶ 27} Here, in the residential disclosure form, Hoover indicated that she had no actual knowledge of any movement, shifting, deterioration, material cracks/settling, or other material problems with the foundation, basement, floors, or interior/exterior wall – except she noted that she was repairing the windows on the tower – and she was not aware of any settling, grading, or erosion problems. However, the Marion contingency addendum demonstrated that Hoover's statements were false. As explained above, the Marions made a prior offer to purchase the property but attached a contingency addendum and exhibit outlining the problems that their qualified home inspector found as a result of a home inspection. In the exhibit, the Marions indicated that the back turret had no footer, the doors in the spiral staircase pad had settled and needed repaired, the southwest corner of the home under the master bedroom was settling, and the garage floor would need substantial repair due to the settling of the southwest corner. Thus, Hoover knew the house had settling problems but failed to disclose them on the form.

{¶ 28} Appellant counters that the defects were readily discoverable and identifiable through a home inspection, noting the rear pad had not been poured, and the condition of the foundation was open to inspection. However, appellant fails to note the contrary testimony of Hubbard's witnesses, Wesley Davis and Wayne Custer. Davis, a residential construction expert, testified that he discovered the lack of a footer beneath the turret room had been concealed by fresh concrete, and stucco was used to dress up the concrete pad to cover cracks. Davis also testified that the garage floor had been replaced with fresh concrete. Importantly, Davis testified that the defects related to the turret room

and garage floor would not have been noticeable with a visual inspection, as concrete had been poured against the house to conceal the underlying problems with the turret, and handmade wood shims had been used to stabilize the garage wall, with a skim coat used to cover the cracks and shims. Custer, a structural engineer and home inspector, similarly testified that the lack of a pad underneath the turret room, the settling of the garage floor, and the settling of the southwest corner of the house would not have been discoverable upon ordinary inspection.

{¶ 29} Appellant also argues that the actual cause of the problems raised by Hubbard was soil instability, which occurred six months after the sale and following unusually heavy rain and the draining of the lake for repairs. However, the record is completely devoid of any evidence that either rain or the draining of the lake were responsible for any of the settling problems. Appellant presented no evidence to support such a claim at trial, and Hubbard's expert witness, Custer, testified that he did not believe that the lake level was the root cause of the settling problems.

{¶ 30} Appellant further contends that Hubbard failed to demonstrate justifiable reliance. The question of justifiable reliance is one of fact, and the court must inquire into the relationship between the parties. *Crown Property Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 657 (12th Dist.1996). It must consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances. *Farris Disposal, Inc. v. Leipply's Gasthaus, Inc.*, 9th Dist. No. 22569, 2005-Ohio-6737, ¶ 18, quoting *Radice Partners Ltd. v. Angerman*, 9th Dist. No. 90CA004861 (Jan. 16, 1991).

{¶ 31} In the present case, appellant argues that Hubbard admitted he did not rely on either the disclosure form or anything else represented by TNT. Appellant points out

that Hubbard is an educated scientist and entrepreneur with lawyers under his employ. Appellant claims Hubbard relied upon no opinions but his own.

{¶ 32} Hubbard testified that, on the purchase contract he signed, it indicated the purchaser was relying upon the representations made in the residential property disclosure form, along with his own examination and inspections. Hubbard testified that he expected the information that was contained in the property disclosure form to be truthful, and he accepted that the information contained in the property disclosure form was truthful. Although Hubbard testified that, albeit with some uncertainty, there was nothing in the disclosure form that caused him to sign the contract and he did not rely upon the disclosure form, he went on to explain, "I saw what I saw. Now when I read [the property disclosure form] uh, there might be something that I miss. I don't know." He testified that he was comfortable and "accepted" the house as he saw it.

{¶ 33} Hubbard's testimony resonates with the principle that "[r]eliance is justified if the representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation." *Trepp, LLC v. Lighthouse Commercial Mtge., Inc*, 10th Dist. No. 09AP-597, 2010-Ohio-1820, ¶ 21, citing *Lepera v. Fuson*, 83 Ohio App.3d 17, 26 (1st Dist.1992). Here, Hoover's fraudulent representations on the disclosure form regarding the settling problems failed to prompt Hubbard to further inquire about any problems. Hubbard had no reason to doubt the veracity of Hoover's representations on the form, and her fraudulent representations did not dispel any of the conclusions drawn from his visual inspections. Hubbard walked through the property twice and saw minor hairline cracks in the plaster, but he deemed those normal. He saw no evidence of settling. He also saw minor cracking in the turret room. He observed the terrace walls outside and saw no major cracks or

movement of any kind. He testified he noticed no sloped areas of grass. He said he took the condition of the home at face value. Thus, it is apparent that if Hoover would have revealed what she learned about the settling problem based upon the Marion contingency addendum, Hubbard would have had reason to question what he observed regarding the condition of the house. Although he stated he did not sign the purchase contract based upon what the disclosure form indicated, his testimony supports that Hoover's revelation of the conditions listed in the Marion contingency addendum would have certainly drawn his attention and prompted him to inspect the house further. Hubbard testified that an inspection "wasn't important then, because I thought it wasn't important then." This statement supports the view that, if Hoover would have revealed all she knew from the Marion contingency addendum, Hubbard would have found an inspection to be important at that time.

{¶ 34} In addition, TNT's additional assertions that Hubbard's agent, Shanks, told Hubbard about the problems with the cracked garage floor and other defects; Hubbard knew the house had problems; and Hubbard knew that substantial repairs, including foundation work, were ongoing, are irrelevant. Hubbard's testimony clearly revealed that no one, including Shanks, ever informed him of the settling problems outlined in the Marion contingency addendum. Furthermore, although Hubbard knew the house had some "problems," Hubbard testified that those were limited to disrepair of the deck and minor cracks in the walls, turret room, and exterior retaining wall. Shanks's representations to Hubbard did nothing to assuage the fraudulent representations by Hoover. For the foregoing reasons, we find the trial court did not err when it denied TNT's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict.

{¶ 35}  We also note that, although appellants argue briefly that Hubbard failed to demonstrate negligent misrepresentation, and the jury issued a general verdict in favor of Hubbard on his negligent misrepresentation claim against Hoover, the jury did not make any award to Hubbard on that claim. The negligent misrepresentation claim was an alternative claim to the fraudulent misrepresentation and fraudulent concealment claims. That these claims were in the alternative is demonstrated by the answers to the jury's interrogatories, as well as the trial court's comments in its journal entry denying the motions for judgment notwithstanding the verdict filed by Realtec and TNT. Furthermore, in its judgment entry, the trial court did not indicate that the jury found in favor of Hubbard on his negligent misrepresentation claim and did not enter final judgment against Hoover on this claim. Thus, this argument is moot. For these reasons, TNT's first assignment of error is overruled.

{¶ 36}  TNT argues in its second assignment of error that the trial court erred when it denied its motion to dismiss Hubbard's claims against Hoover personally. TNT asserts that Hoover, as a member of TNT, a limited liability corporation, cannot be held personally responsible for TNT's debts, and Hubbard has never claimed that the "corporate veil" should be pierced to render her personally liable as a member of a limited liability company.

{¶ 37}  However, Hubbard counters that he has never sought to pierce the corporate veil; rather, he sought personal liability against Hoover because she engaged in fraudulent conduct personally, and she was personally liable under the purchase contract by failing to execute it as a corporate officer.

{¶ 38}  "[I]f a corporate officer executes an agreement in a way that indicates personal liability, then that officer is personally liable regardless of his intention." *Spicer*

*v. James*, 21 Ohio App.3d 222, 223 (2d Dist.1985). Whether an officer or agent is personally liable under the contract depends upon "the form of the promise and the form of the signature." *Id.* The typical format to avoid individual liability is "company name, individual's signature, individual's position." *The Big H, Inc. v. Watson*, 1st Dist. No. C-050424, 2006-Ohio-4031, ¶ 7. The signature itself represents a clear indication that the signator is acting as an agent if: (1) the name of the principal is disclosed, (2) the signature is preceded by words of agency such as "by" or "per" or "on behalf of," and (3) the signature is followed by the title which represents the capacity in which the signator is executing the document, e.g., "Pres." or "V.P." or "Agent." *Hursh Builders Supply Co., Inc. v. Clendenin*, 5th Dist. No. 2002CA00166, 2002-Ohio-4671, ¶ 21.

{¶ 39} In the present case, Hoover did not comply with these guidelines in completing the purchase contract. Hoover signed the purchase contract with only her own name. "TNT" does not precede her signature, and Hoover failed to note any official capacity or position in which she was signing the contract after her signature. "[W]here an agent signs a negotiable instrument by affixing thereto his own signature, without adding the name of the principal for whom he acts, the agent so signing is himself personally bound on such instrument." *W. Shell Commercial, Inc. v. NWS, L.L.C.*, 12th Dist. No CA2006-06-154, 2007-Ohio-460, ¶ 6, quoting *Aungst v. Creque*, 72 Ohio St. 551, 553 (1905). Under the present circumstances, we find that Hoover incurred personal liability under the contract. Although the first page of the contract and the counter addendum references "TNT Holdings Marie Hoover" as the seller, there is no "by" or "per" notation or a designation of Hoover's title. Moreover, every signature and every set of initials throughout the entire contract and addenda are executed by Hoover individually.

{¶ 40} Hoover attempts to escape personal liability under the purchase contract by arguing that, because Shanks was also an agent of Hubbard while acting in a dual-agency capacity for both the buyer and seller, Shanks's knowledge that Hoover was acting in her capacity as a member of TNT must be imputed to Hubbard. However, we first note that nowhere in TNT's motion to dismiss did it raise this agency/imputed knowledge argument. It is well-settled that a litigant's failure to raise issues for the trial court's determination in a motion to dismiss waives those issues for purposes of appeal. *See Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 541 (1994), fn. 7; *Abraham v. Natl. City Bank Corp.*, 50 Ohio St.3d 175, 176 (1990), fn. 1.

{¶ 41} Notwithstanding, TNT's argument does not affect our conclusion that Hoover executed the purchase contract in her individual capacity, albeit inadvertently. TNT sites no authority for the proposition that Hubbard's imputed knowledge of Hoover's acting on behalf of TNT vitiates the personal liability incurred by Hoover's execution of the purchase contract in her individual capacity. As explained above, an officer who executes an agreement in a way that indicates personal liability is personally liable regardless of intention. Therefore, whether Hoover intended to act as an officer of TNT and expressed her intention to do so to Shanks is irrelevant. It is the actual form of the signature on the contract that is important. For these reasons, we must reject TNT's argument and overrule its second assignment of error.

{¶ 42} TNT argues in its third assignment of error that the trial court erred when it allowed Hubbard's expert witness to express an opinion as to the ultimate issue of whether TNT knowingly misrepresented or concealed defects in the property. A trial court has broad discretion in the admission or exclusion of evidence. *Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 113 (1989). So long as a trial court exercises its discretion in

accordance with the rules of procedure and evidence, a reviewing court will not reverse that judgment absent a clear showing of an abuse of discretion with attendant material prejudice. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991); *State v. Hymore*, 9 Ohio St.2d 122 (1967). Thus, we review a trial court's decision regarding the admission or exclusion of expert witness testimony under an abuse of discretion standard. *Am. Select Ins. Co. v. Sunnycalb*, App. No. CA2005-02-018, 2005-Ohio-6275, ¶ 14, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 86 (1985).

{¶ 43} Ultimate issue testimony is not per se inadmissible. Evid.R. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."). Rather, its admission depends upon how helpful the opinion is to the jury and whether the issue is one that might be beyond an ordinary juror's understanding. *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949), paragraphs one and two of the syllabus (the existence or nonexistence of an ultimate fact is generally the province of the jury, but that an expert may express an opinion on the same if the issue is one beyond the experience, knowledge or comprehension of the jury). A trial court is vested with substantial discretion in its rulings as to the admissibility of ultimate-issue testimony. *Blanton v. Internal. Minerals & Chem. Corp.*, 125 Ohio App.3d 22, 29, (1st Dist.1997).

{¶ 44} In the present case, TNT first argues that Hubbard's expert, Custer, should not have been permitted to offer testimony with regard to whether any of the defendants intentionally concealed defects in the subject property, had knowingly withheld information that was known to them concerning the condition of the subject property, or had otherwise acted fraudulently. Specifically, TNT argues that Custer should not have been permitted to testify, as he did, that (1) the structural defects in the house were

concealed during construction, (2) the defects were hidden from Hubbard, and (3) the repairs were completed to hide what was going on around the foundation of the house.

{¶ 45} We begin with the conclusion that Custer's above testimony was admissible because it was helpful to the jury and beyond an ordinary juror's understanding. Custer testified that his opinion, as a structural engineer, was that the structural defects in the house were concealed during construction and were not visible during his first inspection. Custer said he has done so many inspections that he knew what to look for, but the average person would not have been able to discern the defects. He said the new garage concrete floor that was poured in 2007 was already heaving when he inspected the home, the heaving was getting worse, and the slab did nothing to fix the unstable soil under the slab. He called the repairs completed around 2007 "spot" repairs. He said that when he first inspected the home, the red concrete and red parge that was put over "everything" puzzled him, but he later concluded that they, along with the concrete elements around the house and turret room, were put there purely to hide the settlement of the foundation and served no useful structural purpose. He also said that retaining walls around the house were not designed or installed as retaining walls, they had very little rebar in them, and a very heavy coat of parge material had been placed on them to try to hide the cracks in those walls. He said anyone with little experience with construction or engineering would not have been able to detect the problems. He disagreed with the suggestion by TNT's attorney that the wood shims could have been in place since the home was built in 1997. He said it was his professional opinion that the shims were recently put there to temporarily remedy the settling problem in that area. Clearly, Custer's testimony would have been helpful to the jury, and Custer explained that his experience allowed him to

discover these defects, determine they were superficial, and conclude their sole purpose was to conceal the problems rather than fix them.

{¶ 46} TNT cites a number of cases to support its contentions, but we find them all inapposite to the facts in the present case. The cases cited by TNT relate to experts testifying as to the veracity or credibility of another party. Here, Custard did not testify as to Hoover's truthfulness on any matter. Custer testified as to whether the defects were intentionally concealed. Therefore, we find the cited cases unpersuasive.

{¶ 47} TNT also argues that the trial court should not have allowed Hubbard to introduce Custer's report, which reiterated his testimony regarding Hoover's concealing of defects. TNT contends the trial court erred when it relied upon R.C. 2317.36, which provides:

> A written report or finding of facts prepared by an expert * * * and containing the conclusions resulting wholly or partly from written information furnished by the co-operation of several persons acting for a common purpose, shall, in so far as the same is relevant, be admissible when testified to by the person, or one of the persons, making such report or finding without calling as witnesses the persons furnishing the information, and without producing the books or other writings on which the report or finding is based, if, in the opinion of the court, no substantial injustice will be done the opposite party.

{¶ 48} TNT argues that Custer was not utilizing data compiled by other persons and was merely expressing his own opinion. However, R.C. 2317.36 was, in fact, relevant, insofar as TNT had argued that Custer's opinions in his report were based upon a soil report from another company, and nobody from that company ever testified. Custer used the soil report from the company to formulate his own opinions. Thus, the trial court did not err when it cited R.C. 2317.36. We find no basis to exclude the report. For these reasons, TNT's third assignment of error is overruled.

{¶ 49} TNT argues in its fourth assignment of error that the trial court erred in its instructions to the jury. "When we review a trial court's jury instructions, we must consider the jury instructions as a whole, rather than viewing an instruction in isolation, and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *State v. Ward*, 168 Ohio App.3d 701, 2006-Ohio-4847, ¶ 29 (4th Dist.). Generally, reversal is not warranted "due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict." *Id.*

{¶ 50} Here, TNT specifically points out three jury instructions that were erroneous. TNT first argues that the trial court erred by failing to indicate in the jury instructions that a finding of fraud required Hubbard to show that TNT misrepresented or concealed material facts about the property with "actual" knowledge of their falsity. TNT asserts that, in its charge to the jury, the trial court omitted the actual knowledge requirement. TNT claims that the court essentially made it liable for not knowing about latent defects in its property.

{¶ 51} The precise basis of TNT's argument is difficult to discern. The jury instructions for the fraudulent concealment and misrepresentation both provided that Hubbard was required to prove that Hoover knew or acted with utter disregard or recklessness for whether her misrepresentation was false or her concealment resulted in a false representation. As explained above, this is a proper statement of law. *See Burr* at paragraph two of the syllabus. Nevertheless, as we have already found, Hoover had actual knowledge of the falsity of her representations based upon the Marion contingency addendum and Custer's testimony. Therefore, this argument is without merit.

{¶ 52} TNT also argues that the court gave instructions concerning Hoover's personal liability for signing documents on behalf of TNT that were not supported by the evidence because she disclosed her status as a member of TNT, a limited liability company. However, we have already found that the jury property found Hoover was personally liable. Therefore, this argument is without merit.

{¶ 53} TNT also argues that the court's instruction on negligent misrepresentation was not warranted. However, as already explained above, because the trial court did not enter judgment against Hoover or TNT on Hubbard's negligent misrepresentation claim, this argument is moot. For all of the foregoing reasons, TNT's fourth assignment of error is overruled.

{¶ 54} TNT argues in its fifth assignment of error that the jury's verdict was against the manifest weight of the evidence. However, TNT presents no argument to support its assignment of error but merely reiterates the manifest weight of the evidence standard. App.R. 16(A)(7) requires an appellant to include an argument containing her contentions with respect to each assignment of error. It is not this court's duty to make an argument for the appellant. *In re A.Z.*, 4th Dist. No. 11CA3, 2011-Ohio-6739, ¶ 18; *State v. Nguyen*, 4th Dist. No. 12CA14, 2013-Ohio-3170, ¶ 37. Having failed to present any further argument in support of its argument, and considering our findings on TNT's previous arguments, we cannot find the jury's verdict was against the manifest weight of the evidence. Therefore, TNT's fifth assignment of error is overruled.

{¶ 55} Because Realtec argues all of its assignments of together, we will also address them together. Realtec argues in its first assignment of error that the trial court erred when it denied its motion for summary judgment. Realtec argues in its second assignment of error that the trial court erred when it denied its motion for directed verdict

and judgment notwithstanding the verdict. Realtec argues in its third assignment of error that the trial court's findings that it violated a fiduciary duty and was negligent were against the manifest weight of the evidence. We initially note that Realtec and Shanks did not move for directed verdict; thus, this argument is without merit.

{¶ 56} Realtec first argues that the doctrine of caveat emptor and the "as is" provision in the purchase agreement precludes Hubbard's recovery for his breach of fiduciary claim. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis*, 66 Ohio St.2d 74 (1981), quoting *In re Termination of Employment of Pratt*, 40 Ohio St.2d 107, 115 (1974). Claims for breach of fiduciary duty require proof of the following elements: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Harwood v. Pappas & Assoc., Inc.*, 8th Dist. No. 84761, 2005-Ohio-2442, ¶ 26, citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988). Thus, a claim for breach of fiduciary duty is similar to an ordinary negligence claim, the difference being that the standard of care is higher. *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, ¶ 19 (3d Dist.)

{¶ 57} In the case before us, a fiduciary duty arose from Shanks's status as a dual real estate agent for both Hubbard and TNT. Real estate agents owe a fiduciary duty to their clients. *Parahoo v. Mancini*, 10th Dist. No. 97APE08-1071 (Apr. 14, 1998). Likewise, real estate brokers have statutory and common law fiduciary duties of disclosure, good faith, and loyalty. *State Farm Fire & Cas. Co. v. Century 21 Arrow Realty*, 8th Dist. No. 87081, 2006-Ohio-3967, ¶ 33, quoting *Horning v. Fletcher*, 7th Dist. No. 05MA 7, 2005-

Ohio-7078. R.C. 4735.62 sets forth a non-exhaustive list of statutory fiduciary duties

applicable to a real estate agent or broker, which include the following:

> (A) Exercising reasonable skill and care in representing the
> client and carrying out the responsibilities of the agency
> relationship;
>
> * * *
>
> (D) Performing all duties specified in this chapter in a manner
> that is loyal to the interest of the client;
>
> * * *
>
> (F) Disclosing to the client any material facts of the
> transaction of which the licensee is aware or should be aware
> in the exercise of reasonable skill and care and that are not
> confidential information pursuant to a current or prior agency
> or dual agency relationship.

{¶ 58} "Furthermore, the Ohio Supreme Court has held: 'One who acts as an agent

for another becomes a fiduciary with respect to matters within the scope of the agency

relation. An agent owes his principal a duty to disclose all material information which the

agent learns concerning the subject matter of the agency relation and about which the

principal is not apprised. Furthermore, where a principal suffers loss through his agent's

failure to function in accordance with his duty, the agent becomes liable to the principal

for the resulting damages.' (Citations omitted.) *Miles v. Perpetual S.&L. Co.* (1979), 58

Ohio St.2d 93, 95." *State Farm Fire & Cas. Co. v. Century 21 Arrow Realty*, 8th Dist. No.

87081, 2006-Ohio-3967, ¶ 34.

{¶ 59} A dual agent representing both buyer and seller has a fiduciary duty to

disclose to both of them all non-confidential information material to the transaction.

*Levert-Hill v. Associated Holding Group, LLC*, 8th Dist. No. 97938, 2012-Ohio-3819, ¶

38. Because of the affirmative obligations arising from the fiduciary relationship between

a real estate agent and his clients, the defense of caveat emptor does not apply when a real estate agent fails to disclose to his clients facts which were known or should have been known by him that are material to the transaction. *Finomore v. Epstein*, 18 Ohio App.3d 88, 90 (8th Dist.1984); *Allison v. Cook*, 139 Ohio App.3d 473 (12th Dist.2000) (caveat emptor is not a defense to a claim that an agent defrauded a client). Also, when a fiduciary relationship exists, as between a realty agent and a client, the clients are entitled to rely upon the representations of the realty agent. *Foust v. Valleybrook Realty Co.*, 4 Ohio App.3d 164 (6th Dist.1981). Furthermore, due to the fiduciary relationship between the buyer and his or her agent, the property being sold "as is" does not preclude the buyer's cause of action against his or her agent. *Gordon v. Skopos*, 11th Dist. No. 2004-T-0111, 2005-Ohio-4900, ¶ 20, citing *Allison* at 487.

{¶ 60} In the present case, it is uncontested that Shanks was operating as a dual real estate agent for both Hubbard and TNT. Shanks testified that she prepared the Marion contingency addendum herself. Acting as a dual agent for the Marion transaction, she personally wrote on the Marion contingency addendum that the Marions had discovered several issues and concerns as the result of a home inspection by a qualified home inspector. Shanks wrote on the contingency addendum that the Marions had estimated repairs to the foundation and structure could exceed $30,000, and she outlined in the inspection addendum the structural and foundation issues already outlined above. However, Shanks testified that she did not really believe the Marions and thought they were using the contingency addendum as a negotiating tool. She said the Marions did not show her the typical binder completed by a home inspector, and she questioned them about it. The Marions also never told her the name of the inspector, and the Marions were only gone for about two hours before returning the house key to her and telling her the

inspection was done, while a typical inspection takes two to four hours. She said the Marions had originally written their concerns on a little piece of paper, and she merely made a cleaner copy for the contingency addendum. She also said that it was her own idea that the turret room might not have a footer, after the Marions told her that the windows had a lot of condensation. She testified that she did tell Hubbard that the turret room had "an issue." She admitted she did not tell him that there was no footer because that was not her area of expertise. She also said she wrote "no footer" on the inspection addendum as a discussion point, not as a fact. She said that the fact that the doors in the spiral staircase had settled, which she wrote in the inspection addendum, did not suggest to her that there was no footer. She said she wrote that the southwest corner under the master bedroom was settling merely because the Marions told her to write it down. She testified that the garage floor in the southwest corner was very cracked at the time of the Marion offer, but it did not occur to her that there might be settling problems. She admitted that she was aware of all of the problems outlined in the Marion contingency addendum and still allowed Hubbard to sign the "as-is" purchase contract. She further testified that Hubbard never asked her for advice.

{¶ 61} After reviewing the testimony and evidence adduced at trial, we agree there was substantial evidence to support the jury's verdict against Shanks and Realtec. Shanks was required to disclose to Hubbard any material facts related to the home that she was aware of. She was clearly aware of the Marion contingency addendum. Her defense that she did not know whether the concerns in the Marion contingency addendum were "facts" is unavailing. Even if she had no additional support for the issues raised in the contingency addendum, which we are not convinced is the proper standard, and was not sure whether the Marions actually used a qualified home inspector, that the Marions

raised all of these serious concerns is a material fact itself that Shanks had a duty to disclose to future purchasers. Shanks knew the Marions had raised numerous structural and foundation concerns and knew that Hoover was taking actions as a result of these concerns, and she should have told Hubbard that a prior purchaser had levied critical concerns regarding the structural and foundational integrity of the home, regardless of whether those charges stemmed from a qualified home inspector or other person. The vague information she did pass on to Hubbard, which basically amounted to telling him that the house needed repairs and he should have it inspected, does not fulfill her fiduciary duty to disclose all material facts. Furthermore, Shanks's defense that Hubbard was a sophisticated, intelligent buyer who never sought her advice is irrelevant to her fiduciary duty to disclose all material facts. Because of Shanks's fiduciary relationship and her failure to disclose material facts known by her, neither the doctrine of caveat emptor nor the "as-is" provision in the contract relieved her of liability. For these reasons, we find the trial court did not err in ruling on Realtec's motions for summary judgment and judgment notwithstanding the verdict, and the judgment was not against the manifest weight of the evidence with regard to both breach of fiduciary duty and negligence. Realtec's first, second, and third assignments of error are overruled.

{¶ 62} Hubbard asserts in his sole assignment of error that the jury's award of zero damages against Shanks and Realtec was against the manifest weight of the evidence. When it is alleged that a judgment is against the manifest weight of the evidence, an appellate court conducts the same manifest weight analysis in both criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17-20. When an appellant challenges a trial court's judgment in a civil action as being against the manifest weight of the evidence, the function of the appellate court is limited to an examination of

the record to determine if there is any competent, credible evidence to support the underlying judgment. *Yurkowski v. Univ. of Cincinnati*, 10th Dist. No. 11AP-974, 2013-Ohio-242, ¶ 41, citing *Lee v. Mendel*, 10th Dist. No. 98AP-1404 (Aug. 24, 1999). Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 63} The decision of a trial court as to a determination of damages is not to be disturbed absent an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634 (1996). The result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256-57 (1996). In order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim. (Emphasis deleted.) *Bailey v. Allberry*, 88 Ohio App.3d 432, 435 (2d Dist.1993).

{¶ 64} In the present case, Hubbard claims that, given that the jury found Shanks and Realtec breached their fiduciary duty and were negligent in failing to disclose the same defects the jury found Hoover and TNT failed to disclose, and the jury found Hoover and TNT liable for $216,337.75 in damages for failing to disclose the same defects, the jury should also have found that Shanks and Realtec were liable for those damages.

Hubbard points out that it was the defects in the Marion contingency addendum that Hoover fraudulently concealed and misrepresented, and it was the same defects in the Marion contingency addendum that Shanks and Realtec knew about and had a fiduciary duty to disclose. Hubbard also points out that the only evidence in the record regarding damages was from his expert who testified it would cost $216,337.75 to repair those defects. Hubbard argues that Shanks and Realtec are equally as responsible for that amount as Hoover and TNT.

{¶ 65} Realtec counters that at no time did Hubbard seek joint and several liability. Realtec points out that they were found liable for breach of fiduciary duty and negligence, while Hoover and TNT were found liable for fraud and breach of contract; thus, the parties were not joint tortfeasors because there was no common neglect of duty. Realtec also asserts that separate damage awards from Hoover and TNT and also Realtec and Shanks would allow Hubbard to receive a windfall.

{¶ 66} Hubbard contends that his appeal has nothing to do with joint and several liability, and he does not seek to hold Shanks and Realtec jointly and severally liable based on the actions of Hoover and TNT. Instead, Hubbard maintains, he seeks to hold Shanks and Realtec liable for their own conduct. Hubbard also responds that he is not seeking a windfall or double recovery, and he is only entitled to recover once for the damages incurred.

{¶ 67} We find that the portion of the verdict awarding no damages was inconsistent with the finding of liability for breach of fiduciary duty and negligence, and against the manifest weight of the evidence. The jury concluded that Shanks and Realtec were negligent and breached their fiduciary duty to Hubbard, and Hubbard presented uncontested evidence that he incurred damages as a result. Shanks and Realtec fail to set

forth any theory as to how the jury could have found that they were not responsible for any damages incurred by Hubbard despite their liability. We concur with the trial court's sentiment in denying the motion for judgment notwithstanding the verdict filed by Shanks and Realtec, that it was "frankly * * * at a loss as [to] why the jury awarded no damages against [Shanks]" given that the entire situation may have been avoided had Shanks disclosed the information from the Marion contingency addendum. The matter must be remanded for a new trial on damages. *See Meyer v. Chieffo,* 180 Ohio App.3d 78, 2008-Ohio-6603 ¶ 26 (10th Dist.) (remanding the matter for a new trial as to damages when the portion of the verdict awarding no damages was inconsistent with the finding of liability for breach of contract and against the manifest weight of the evidence). For these reasons, we sustain Hubbard's assignment of error.

{¶ 68} Accordingly, we overrule Hoover's and TNT's assignments of error, overrule Shanks's and Realtec's assignments of error, sustain Hubbard's assignment of error. The judgment of the Pike County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for a new trial as to damages relating to the jury's finding of liability against Shanks and Realtec.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

SADLER, P.J., and KLATT, J., concur.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Costs shall be split equally.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

* SADLER, P.J., and KLATT, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       Susan D. Brown, Judge *


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**


* Susan D. Brown, William A. Klatt and Lisa L. Sadler, from the Tenth Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.