[Cite as *Levert-Hill v. Associated Holding Group, L.L.C.*, 2012-Ohio-3819.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97938**

## BILLIE J. LEVERT-HILL

PLAINTIFF-APPELLANT

vs.

## ASSOCIATED HOLDING GROUP, LLC, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-750680

**BEFORE:** Sweeney, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**ATTORNEY FOR APPELLANT**

Jaye M. Schlachet, Esq.
55 Public Square
Suite 1600
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEES**

Mark L. Rodio, Esq.
Frantz Ward, LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114

JAMES J. SWEENEY, J.:

**{¶1}** Plaintiff-appellant Billie J. Levert-Hill ("Hill") appeals from the trial court's order that granted summary judgment and dismissed her complaint for breach of fiduciary duty, breach of contract, fraud, and detrimental reliance against defendants-appellees Associated Holding Group, L.L.C., d.b.a. Prudential Select Properties ("Prudential") and Jason Caccamo ("Caccamo").[1]

**{¶2}** Prudential and Caccamo moved for summary judgment, which Hill opposed, and the trial court granted. As set forth below, we affirm in part, reverse in part, and remand for further proceedings.

**{¶3}** On appeal, Hill raises the following assignment of error:

The trial court improperly granted appellees' Motion for Summary Judgment where there is a genuine issue of material fact remaining as to whether appellees acted in a dual capacity, failed to represent appellant, and committed misrepresentations upon which appellant relied, to her economic damage.

**{¶4}** Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, as follows:

---

[1]Appellant's complaint also named other defendants, however, appellant voluntarily dismissed her claims against them by notices filed on March 21, 2011 and April 15, 2011.

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

*Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶5} The facts construed in a light most favorable to Hill, the non-moving party, include the following:

{¶6} In March of 2010, Hill contacted Caccamo, a real estate agent who worked as an independent contractor for Prudential at that time. Hill was interested in purchasing real estate for investment purposes and was specifically inquiring about one of Caccamo's listings in a Shaker Heights condominium complex. Caccamo testified that Hill was very clear she intended to purchase the property for investment and also intended to use it as a rental property. Caccamo told her she could rent these units to tenants. In fact, that is what Caccamo believed based on his knowledge that other units in that complex had been advertised for rental on the Multiple Listing Service ("MLS"). He had no idea that the Board could restrict an owner's ability to rent the units.

{¶7} Caccamo arranged to show Hill three units on the same day, including his own listing, unit #206. As a formality, Caccamo had Hill sign an agency disclosure form for unit #206, that indicated that he represented the seller in the transaction rather than Hill. The substance of the form advised Hill that Caccamo represented the "seller" and

that "any information provided to the agent may be disclosed to the agent's client." In essence, the agency disclosure form governed the agent's use or disclosure of each parties "confidential information." Hill also signed two additional agency disclosure forms that indicated that Caccamo represented her with regard to the offers made on the other units, that is unit #404 and unit #306.

{¶8} Notwithstanding the agency disclosure form, Caccamo testified that he believed he did represent Hill with regard to unit #206 as well and he understood that Hill was relying on his services with regard to that unit and his representations about her ability to rent out all of the units. Caccamo testified that he felt he was acting in a "dual agency" capacity with regard to unit #206. Without dispute, Caccamo was acting solely as Hill's agent with regard to the other two units in the same complex, which were listed by other agents.

{¶9} Hill made offers on all three units on the same day, however, the only offer accepted was the one she made on unit #206. Because Caccamo was the only agent involved, he and Prudential received the entire real estate commission on the transaction. In addition, Hill was assessed an additional fee of $265.00 for "brokerage service fee" that she would not have had to pay to Prudential if an agent from a different brokerage had represented her.

{¶10} Hill asked Caccamo to provide her with the condominium complex's bylaws "several times." Hill never received a copy of the bylaws.[2] Although there is a

---

[2]The record contains a copy of South Park Manor Condominiums Handbook

condominium addendum to the purchase agreement that appears executed by Hill, Caccamo admitted that he signed her name on it without her permission.

{¶11} Hill even contacted Caccamo by telephone from the closing table asking him specifically if she could rent the unit and inquiring about the bylaws. Caccamo responded that, based on his knowledge, the unit was rentable. He told her he had the bylaws but he never actually said that he reviewed them. Hill testified that Caccamo told her he had the bylaws and that she could rent the unit. This is supported by Caccamo's own deposition testimony that includes the following exchange:

> Q: So let me just try to understand. She calls you at closing and says to this effect, Jason, we've got to be sure, I'm ready to close. Am I going to be able to invest and rent this property? And you said I have the bylaws, I believe you can do it.
>
> A: Yes.

{¶12} Shortly after closing, Hill encountered an officer of the condominium's Board of Directors who told her that rental was strictly prohibited and that the bylaws required the units to be owner occupied.

{¶13} Hill contacted Caccamo, and they eventually discovered that the bylaws contain the following restriction:

{¶14} "1. Unless registered by August 23, 1994, leasing a unit is prohibited without the prior, written approval of the Board."

---

of Rules and Information as Defendant's Exhibit E to Hill's deposition, which are referred to herein as the "bylaws."

**{¶15}** Thereafter is a litany of requirements, procedures, and restrictions seeking to regulate the unit owner's ability to rent their condominium unit.

**{¶16}** There is no dispute that Hill would not have purchased unit #206 or any unit in that complex if Caccamo had told her about these provisions and restrictions. Caccamo admitted that the ability to rent without restriction was material to Hill's decision to write an offer. He was unaware that there could be restrictions of this nature. Caccamo testified that he should have known about the restriction and should have informed Hill about it.

**{¶17}** Caccamo advised Prudential about the situation and believed they would handle the matter by possibly paying off Hill's mortgage and reimbursing her expenses. However, when Hill contacted Prudential, according to Caccamo, Prudential management "pretended not to know anything about it." Ultimately, Caccamo removed his license from Prudential and went to a different brokerage, in part, because he was upset by the way Prudential handled this incident.

**{¶18}** Hill testified that she has never submitted a request to the board to rent the unit because the president or vice president told her she could not do so. There are documents in the record that indicate some of the units have been used as rental property. There is no documentation in the record that the board of directors permitted or authorized those rentals.

**{¶19}** Hill's intent to rent the unit is further supported by her loan application where she indicated she would not reside in the unit as well as the City's Housing

Inspection report that indicates that the property will be used as rental property and indicates that it will not be owner occupied.

{¶20} Prudential and Caccamo moved for summary judgment on all of Hill's claims against them. They relied on Hill's deposition testimony and Caccamo's deposition testimony to support their motion. In particular, they argued that Hill's claims were barred because she allegedly has no damage; that the breach of fiduciary duty claim was barred because appellees only represented the seller in the transaction; that the breach of contract claim was barred because Hill had no contract with appellees; that her fraud claim was barred by the "as is" clause in the purchase agreement and because there is a possibility she could rent the unit if the board approved her request; and her "detrimental reliance" claim failed to state a claim for relief because it is only one element of a promissory estoppel cause of action. Although Hill opposed appellees' motion, the trial court granted it. Appellees defend the appeal on the same grounds they relied upon in seeking summary judgment in the court below.

{¶21} Hill contends that there are genuine issues of material fact as to: (1) whether appellees were acting in a dual agency capacity; (2) whether appellees breached a fiduciary duty by failing to properly represent her; and (3) whether appellees committed misrepresentations upon which appellant relied to her economic detriment.

{¶22} For the reasons that follow, we find that there are genuine issues of material fact on at least some of Hill's claims.

A. Misrepresentation and Detrimental Reliance.

**{¶23}** It is undisputed that Hill specifically and repeatedly asked Caccamo if she would be able to rent units in the condominium complex to tenants. Caccamo admitted he gave her incorrect information by telling her she could do so without any qualification. Hill also repeatedly asked Caccamo for the condominium bylaws, which he never gave her. Instead, he signed her name on the condominium addendum without her permission. Hill even called Caccamo right before signing the closing documents to make sure she could rent the unit to a tenant. Caccamo responded that he had the bylaws and that she could rent the unit. Again, he did not indicate there were any rental restrictions whatsoever. Caccamo's own testimony confirms that Hill would not have made an offer on any of the condominium units if she knew of the rental restrictions. Caccamo admitted that he should have investigated it and should have given her the correct information.

**{¶24}** We agree that the evidence cannot, as a matter of law, sustain a claim for intentional misrepresentation. There is no evidence that Caccamo made the representations with actual knowledge of their untruth. However, there is plenty of evidence from which a reasonable mind could find in favor of Hill on a theory of negligent misrepresentation that consists of the following elements:

> One who, in the course of his business, profession, or employment, or any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, [and is therefore] subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Crown Property Dev. Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 656, 681 N.E.2d 1343 (12th Dist.1996), quoting *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 436 N.E.2d 212 (1982).

**{¶25}** The Sixth Appellate District has observed that the essential elements of this claim are false information and justifiable reliance. *Abbott v. Loss Realty Group*, 6th Dist. No. L-05-1107, 2005-Ohio-5876, ¶ 23. In this case, the information was false. Although appellees assert that Caccamo made no misrepresentation because the bylaws technically allow owners to rent their units, there are obstacles that the owner has to clear in order to do so, including obtaining consent of the board. Hill testified that an officer of the board told her unequivocally that she could not rent the unit.

**{¶26}** Appellees cite to references in the record that indicate some units in the apartment complex were advertised for rent. Specifically, Caccamo testified that a search conducted on the MLS indicated "which properties had been for rent in 13800 Fairhill Rd." From this appellees infer that the board must have therefore approved a rental request. However, this is an improper inference under the applicable standard of review that requires us to construe evidence in a light most favorable to Hill.

**{¶27}** There is no evidence that the board has ever approved a request to rent any unit in the complex. There mere fact that units were rented does not establish Board permission; in fact, the bylaws do not require board permission for units registered prior to August 23, 1994. It is also possible that the unit owners of the rented units were threatened with or faced potential penalties, such as tenant eviction proceedings for any

alleged unauthorized rental. Therefore, construing the evidence in a light most favorable to Hill, reasonable minds could find on this record that the board has never granted permission for rental to unit owners, like Hill, who have units registered after August 23, 1994.

{¶28} In any case, Hill's position is that she should not have to seek permission from anyone to rent real estate that she herself owns. This is a reasonable position, given the representations appellees made in response to her inquiries about the property. Hill made clear her intention to invest in real estate, which included plans to rent the unit(s) to a tenant. There is no dispute that the information about her ability to rent the unit, including any restrictions, was material to Hill's decision to make an offer to purchase. Regardless of who appellees were representing in this transaction, the law does not allow them to provide any party with false or inaccurate information with respect to a material factor in the party's decision to make an offer on real estate.[3]

{¶29} The doctrine of caveat emptor does not apply under these circumstances. In this case, Hill asked for the bylaws. Even if Prudential's position that Hill was not represented by any real estate agent with regard to unit #206 is correct, who was she supposed to obtain the bylaws from if not appellees who purportedly represented the seller? According to both Caccamo and Hill, she was relying on him to provide her the bylaws, and the critical rental information, for all three units she wrote offers for in the

---

[3] *See,* *e.g.,* R.C. 4735.61.

condominium complex. Further, Hill never indicated that she had received the bylaws before signing the closing documents. Instead of giving her the bylaws, Caccamo signed the condominium addendum for unit #206 without her permission. Then, when Hill made a final effort to make sure she could rent out her investment property, Caccamo told her he had the bylaws and that she could rent the unit.

{¶30} Appellees assert that Hill's mortgage requires her to occupy the unit. This is irrelevant to Hill's claims against appellees for negligent misrepresentation. In any case, Hill has presented her loan application where she disclosed to her lender that she had no intention of residing in the property.

{¶31} Finally, Hill has presented some evidence of damages. There is evidence that Hill would not have even attempted to purchase the unit if she was correctly advised about the rental restrictions. Allegedly as a direct result of receiving false or misleading information, Hill entered a mortgage contract, invested money into the unit, and has paid some amount of maintenance fees. She has been unable to sell her unit and, to date, has reportedly received a single offer that was approximately half of the amount of her purchase price. While there may be a duty to mitigate her alleged damage, she has made out a prima facie case to survive the summary judgment stage on this claim.

B. Breach of Fiduciary Duty.

{¶32} Real estate agents and brokers owe fiduciary duties to their clients. *Ford v. Brooks*, 10th Dist. No. 11AP-664, 2012-Ohio-943, ¶ 11.

**{¶33}** In this case, a single real estate agent, Caccamo, assisted a buyer, Hill, in writing three purchase offers on the same day for condominium units that are all in the same complex. He allegedly represented Hill on two of the offers but not the third. Caccamo provided Hill with incorrect or incomplete information concerning her ability to rent all three of the units, which information was material to Hill's decision to make offers on all of the units.

**{¶34}** Hill had never purchased real estate before, and both she and Caccamo believed he was representing her in some capacity with respect to all three units. Ohio law permits real estate agents to act in three different capacities: (1) as a buyer's agent, representing only the buyer; (2) as a seller's agent, representing only the seller; and (3) as a "dual agent"[4] where they purportedly "represent" both parties, meaning that they cannot disclose the "confidential information" of either party to the other. In the other capacities, the agent can disclose any "confidential information" he or she learns about the other party to his or her client.

> **{¶35}** R.C. 4735.51(G) defines "confidential information" as
>
> all information that a client directs to be kept confidential or that if disclosed would have an adverse effect on the client's position in the real estate transaction, except to the extent the agent is required by law to disclose such information, and all information that is required by law to be kept confidential.

---

[4] "Dual agency" is defined by R.C. 4735.70.

**{¶36}** The information at issue in this case is not "confidential information" but simply concerns the owner's ability to rent the condominium unit to tenants.

**{¶37}** A dual agent representing both buyer and seller has a fiduciary duty to disclose to both of them all nonconfidential information material to the transaction. Caveat emptor is not a defense to a claim that an agent defrauded a client. *Allison v. Cook*, 139 Ohio App.3d 473, 744 N.E.2d 254 (12th Dist.2000).

**{¶38}** We must construe the evidence in a light most favorable to Hill at this point, which includes Caccamo's admission that he was acting in a dual agency role with respect to Hill's offer on unit #206 regardless of the agency disclosure form. We note that Hill was advised that Ohio law required her to sign the form. The form itself is not a contract. In any case Hill, at the same time, signed two other disclosure forms that indicated Caccamo was acting as her agent with regard to the other units. It would require us to twist logic in order to find that Hill could justifiably rely on Caccamo to provide her correct information about her ability to rent the units in the condominium complex with respect to only two of the three units. Had her offers been accepted on either of the other two units, clearly there was a breach of fiduciary duty with regard to the failure to provide complete and accurate information in that regard.

**{¶39}** It is possible that the jury may find that appellees did not owe Hill any fiduciary duty based on the agency disclosure form. However, at this point, there are genuine issues of material fact as to whether Caccamo was in fact acting as a dual agent

with regard to unit #206 and breached a fiduciary duty by providing incorrect information on a material term that involved non-confidential information.

C. Breach of Contract.

**{¶40}** Hill has not challenged the trial court's ruling on this claim that she premised in part on the purchase agreement. Hill averred that appellees failed to investigate whether Hill could rent the unit without restriction. Hill does not point to any provision in the purchase agreement that required appellees to provide or investigate this information. Although Hill refers to a "realty agreement," none was attached to the complaint and we have not found one in the record. Accordingly, the trial court did not err by granting summary judgment in favor of appellees on this claim.

**{¶41}** Based on the foregoing, the judgment is reversed with regard to Hill's claims for negligent misrepresentation/detrimental reliance and breach of fiduciary duty. The judgment is otherwise affirmed on the remaining claims.

It is ordered that appellees and appellant split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR