NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0485n.06

No. 17-3411

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| RUI HE, XIAOGUANG ZHENG, and ZHENFEN HUANG, on behalf of themselves and all others similarly situated, | ) ) ) ) | **FILED**<br>Sep 27, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellees, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| DAVOR ROM, ASSETS UNLIMITED, LLC, INVESTOR INCOME PROPERTIES, LLC, and IIP OHIO, LLC, | ) ) ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: **BATCHELDER, KETHLEDGE, and WHITE, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge**. Davor Rom sold distressed Ohio real estate and property-management services to Chinese nationals, advertising the properties as highly lucrative "hands-off" investment opportunities. Plaintiffs purchased the properties and services, but their investments never produced the promised returns. They brought suit against Rom in the Northern District of Ohio—under federal diversity jurisdiction—seeking relief under a number of Ohio tort and consumer protection laws. A jury found Rom and his companies liable for fraudulent inducement, negligent misrepresentation, and violations of Ohio's Deceptive Trade Practices Act. On appeal, Rom argues that the district court erred by denying his motion for judgment as a matter of law. Many of the arguments Rom raises on appeal were forfeited. Those properly before us lack merit. We **AFFIRM**.

**I.**

Between 2013 and 2015, Plaintiffs[1] Rui He, Xiaoguang Zheng, and Zhenfen Huang bought Ohio real properties from a number of shell companies established and controlled by Davor Rom. Rom, along with Assets Unlimited, LLC, Investor Income Properties, LLC ("IIP"), and IIP Ohio, LLC, are the Defendants-Appellants in this action. Rom owns 100% of Assets Unlimited, LLC, which in turn owns 100% of IIP and IIP Ohio, LLC. These companies share the same agent, Shauna Wu, who worked in China and promoted the properties sold by Rom. Rom used the Chinese website Fang.com (formerly Soufun.com) to advertise properties to Plaintiffs. In those advertisements, Rom marketed a "hands-off" real estate investment where buyers purchased real estate from Rom and then Rom managed the properties. The mission statement of Rom's companies was to provide "a comprehensive process for the acquisition, stabilization, management, and performance of investment properties with 10-20% [return on investment]."

To say the least, none of the Plaintiffs received double-digit returns on their investments. Instead, when they inquired about minimal or no returns, Rom, through his agents, gave excuses for payment delays, requested more money, or just ignored their inquiries.

Plaintiffs brought suit, and argued to a jury that Rom was liable for fraudulent inducement, negligent misrepresentation, and Ohio Deceptive Trade Practices Act ("DTPA") violations. A jury found in favor of Plaintiffs on all counts, pierced the corporate veil of Rom's LLCs, granted punitive damages against Rom, and found Plaintiffs entitled to attorney's fees and costs.

Rom moved for the judgment to be set aside or amended or, alternatively, for a new trial altogether. The district court denied Rom's motion and awarded attorney's fees and costs to Plaintiffs after reducing the requested amount by 25%. Rom appeals to this court claiming that

---

[1] Except where otherwise indicated, we refer to Plaintiffs-Appellees as "Plaintiffs" and to Defendants-Appellants as "Rom."

(1) because his transactions with Plaintiffs concerned real estate, they fall outside the ambit of the DTPA; (2) Plaintiffs failed to prove elements required for fraudulent inducement; (3) Plaintiffs failed to prove elements required for negligent misrepresentation; (4) Plaintiffs failed to prove elements required for piercing the corporate veil; (5) Plaintiffs produced insufficient evidence to warrant punitive damages; and (6) the district court abused its discretion in awarding attorney's fees.

## II.

We review de novo a district court's denial of a motion for judgment as a matter of law. *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 804 (6th Cir. 2015). Such a motion may be granted only where, "when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). We do not weigh evidence or evaluate witness credibility; our judgment "should not be substituted for that of the jury." *Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012) (citation omitted).

## A.

*Ohio Deceptive Trade Practices Act*. Rom argues that Plaintiffs' DTPA claim fails because the DTPA only applies to goods and services, not real estate, and the representations made in this case concerned real estate. Under the DTPA, "[a] person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person," as relevant here, "[r]epresents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ." Ohio Rev. Code § 4165.02(A)(7).

Ohio case law does indeed recognize a "real estate" exception, but in the context of the Ohio Consumer Sales Protection Act ("CSPA"), not the DTPA. *See Brown v. Liberty Clubs, Inc.*, 543 N.E.2d 783, 785 (Ohio 1989). No Ohio court has said whether that exception applies to the DTPA. Typically we have to make our best guess as to what the Ohio Supreme Court would do.[2] We need not do so here, though, because even if the real estate exception present in the CSPA applies to the DTPA, Rom's transactions do not fall within the exception.

*Brown* says that the CSPA has "no application in a 'pure' real estate transaction," but it *is* applicable to "the personal property or services portion of a 'mixed' transaction that also involves the sale of real estate." *Id*. at 785. The rule established in *Brown* is that mixed transactions—transactions that combine services and real estate—can be brought within the ambit of the CSPA. *Id*. at 785-86. In mixed transactions, the CSPA can apply either in part (only to the "personal property or services portion" of the transaction) or in full. *Id*. at 786. Whether the CSPA applies in full depends on whether the services and real estate components of the transaction are "so inextricably intertwined" that it is appropriate to apply the CSPA to the entire transaction. *Id*.

The district court found that Plaintiffs' DTPA claim "was inextricably linked to the Defendants' management services" based on the mission statement of Rom's companies promoting their "comprehensive process for the acquisition, stabilization, management, and performance of investment properties." The district court's conclusion was warranted. Rom advertised to the Plaintiffs a seamlessly integrated "full circle buying process." This "full circle" is precisely what Plaintiffs testified that they relied on in contracting with Rom. Per *Brown*, even if the "pure real estate" exception applied to the DTPA, it would not apply to Rom's transactions with Plaintiffs.

---

[2] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014).

Rom next argues that the DTPA claim fails because plaintiffs did not show that his representations were material, and even if they were, those representations were neither false nor misleading. But Rom did not raise these arguments regarding the DTPA claim before the district court. When parties appeal the district court's judgment and raise arguments not raised before that court, we generally consider those arguments forfeited and decline to address them. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (plurality opinion) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (holding that the *Singleton* rule applies except "in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice" (citation and internal quotation marks omitted)). This is not an exceptional case, nor does application of the rule produce a miscarriage of justice. Rom has forfeited these arguments.

**B.**

*Fraudulent Inducement.* Rom argues that Plaintiffs failed to prove the "justifiable reliance" element of their fraudulent inducement claim because Plaintiffs entered into purchase agreements in which they disclaimed reliance on anything outside of the terms of the contract. This is not quite what Rom argued in the district court. There he argued that his statements did not qualify as fraudulent because they were promises regarding future conduct. While Rom may well have forfeited this argument, *Pinney Dock*, 838 F.2d at 1461, we need not resolve that question because we find that his argument fails on the merits.

To see if Plaintiffs failed to prove justifiable reliance, we must ask whether the record permitted a reasonable jury to come to only one conclusion: that Plaintiffs did not justifiably rely on Rom's representations. *See Barnes*, 401 F.3d at 736. The answer is no. Under Ohio law, "[t]he

question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties." *Crown Property Dev., Inc. v. Omega Oil Co.*, 681 N.E.2d 1343, 1349 (Ohio Ct. App. 1996). "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." *Amerifirst Savings Bank of Xenia v. Krug*, 737 N.E.2d 68, 87 (Ohio Ct. App. 1999).

A reasonable jury could conclude on this record that Rom made representations to Plaintiffs, outside of the terms of the contract, on which they reasonably relied. For example, as the district court points out:

> Rom personally recommended Plaintiff Zheng purchase a specific property because the property had a long-term tenant. Furthermore, Plaintiff He said that he purchased his Property on the Defendants' recommendation. Finally, Plaintiff Huang testified that Defendants' advice led him to purchase a particular property.

Rom does not challenge the district court's representation of the record.

Rom cites Ohio case law for the proposition that "[w]here a claim of fraud in the inducement is based on one party's failure to tell the other party what was *in* the contract, the party's failure to read the contract 'drives a stake into the heart' of their claim." *quoting ABM Farms v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998). This case law is not on point here because Plaintiffs' claim is not "based on [Rom]'s failure to tell [them] what was *in* the contract[.]" Earlier language from *AMB Farms* is more apt: "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract. Examples include a party to a release misrepresenting the economic value of the released claim . . . ." *Id*. Here Plaintiffs claim that Rom fraudulently induced them to enter into their contracts by "misrepresenting the economic value of" the investments he sold and the services he promised to perform managing those investments. That was not the case in *AMB Farms*, where the plaintiff "ma[de] no allegations about misrepresentations of facts outside the contract." *Id*.

Rom next argues that Plaintiffs failed to prove that they were damaged by Rom's fraudulent inducement because they did not offer expert testimony or testimony from the property owners regarding the actual value (as compared to the represented value) of the properties they purchased from Rom. Rom argues that under Ohio law only expert testimony or testimony from the property owner is admissible and that the district court erred by considering any other evidence in finding that Plaintiffs had provided sufficient evidence for damages.

But Rom did not make this argument below. Rom argued before the district court that "[p]laintiffs offered *no evidence* regarding the 'actual value' of the individual properties at the time of sale." (emphasis added). In his Reply to Plaintiffs' Opposition to Defendants' Memorandum in Support of Defendants' Motion for Judgment as a Matter of Law, Rom argued that several kinds of evidence—such as photographs, internal IIP communications, and the difference between Defendants' purchase price and sale price—were insufficient to establish the properties' actual values, but not because those kinds of evidence were inadmissible. Simply put, Rom never argued to the district court what he argues here—that only two kinds of evidence would do. Accordingly, the district court looked to the evidence presented to the jury and found that the jury had an adequate basis for determining the actual value of the properties:

> The Properties' purchase agreements provided an actual value for each property. The Defendants double digit ROI projections provided evidence of what the Defendants represented as the Properties' value. The jury also had photos of the Properties from near the time of purchase. This evidence was sufficient to give the jury a reasonable basis for computation, even though the result is only approximate (footnotes and quotation marks omitted).

Rom now argues that the district court was wrong to look at that *kind* of evidence. Because the district court was not presented with this argument, and did not rule on it, we will not consider it. *Pinney Dock*, 838 F.2d at 1461.

**C.**

*Negligent Misrepresentation.* Rom argues that under Ohio law "[a] claim for negligent misrepresentation is barred in an 'as is' sale of real property." The district court acknowledged that negligent misrepresentation is actionable in the context of real estate sales only when "defendants [are] in the business of supplying information for the guidance of others and plaintiffs must rely on false information from the defendants." The district court correctly held that the jury had an adequate basis for concluding that Rom and his companies were doing just that, and that plaintiffs had relied on the information.

Rom says that the district court came to this conclusion by relying, mistakenly, on *Levert-Hill v. Associated Holding Grp.*, a case concerning a negligent misrepresentation claim brought against a realty company and its agent for representing to the plaintiff that the property could be used as a rental property. 975 N.E.2d 575, 577 (Ohio Ct. App. 2012). In Rom's view, *Levert-Hill*'s facts are distinguishable from the facts in this case, because Rom was merely the "owner/seller of these properties." But the record shows that Rom acted as more than an owner selling a property "caveat emptor." As noted above, Rom was also in the business of supplying information concerning the real estate investments. Rom, very much like the defendant in *Levert-Hill*, represented to Plaintiffs that the real estate he was selling had certain qualities *as investments*, such as, for example, a long-term rental tenant. The jury found he had negligently misrepresented those qualities and on this record it was entitled to do so.

Next, Rom repeats his arguments that (1) the jury could not find that Plaintiffs justifiably relied on Rom's representations because they did not read their contracts and (2) the jury lacked an evidentiary basis for calculating the difference between actual value of the properties and the represented value of the properties. These arguments fare no better as a defense against negligent

misrepresentation than they did against fraudulent inducement, and we reject them for the same reasons.

Finally, Rom argues that "Plaintiff's negligent misrepresentation claim is barred by their recovery on their fraudulent inducement claim." This argument was not made below and so it too is forfeited. *Pinney Dock*, 383 F.2d at 1461.

**D.**

*Piercing the Corporate Veil.* Rom argues that Plaintiffs failed to prove any of the elements necessary to pierce the corporate veil. To pierce the corporate veil under Ohio law, a plaintiff must show that "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Dombroski v. WellPoint, Inc.*, 895 N.E.2d 538, 543 (Ohio 2008) (citation omitted).

Rom forfeited his challenges to the first and second elements because, as noted by Plaintiffs, he did not raise them below. *Pinney Dock*, 838 F.2d at 1461. With respect to the third element, Rom argues that "Plaintiffs failed to establish a causal connection between Rom's ability of control and their alleged injury or loss." Rom's challenge to the third element is unavailing. The first two elements are conceded here, so we evaluate the third element on the assumption that Rom's control over his companies was so complete that they had no separate mind, will or existence of their own and that Rom exercised that control in such a manner as to engage in fraudulent inducement, negligent misrepresentation, and to violate the DTPA. The only remaining question is whether Plaintiffs suffered an injury or unjust loss thereby. In *Taylor Steel*, this Court

found the third element "self-evident[ly]" satisfied when a fact finder had determined that the defendant failed to pay the plaintiff $88,345.78 for which the defendant was contractually obligated. 417 F.3d at 608. Here, the jury found that Plaintiffs were each entitled to recover damages for Rom's fraudulent inducement, negligent misrepresentation, and DTPA violations. And the jury had a basis for reaching that conclusion. The jury could reasonably infer from Rom's testimony at trial that Plaintiffs' injury or unjust loss resulted from Rom's hands-on involvement with the real estate transactions and his personal direction of his companies' actions.

**E.**

*Punitive Damages*. Rom argues that Plaintiffs failed to submit evidence that warranted an award of punitive damages against him because the jury could not have found that Rom committed anything beyond "mere negligence." Punitive damages can be awarded under Ohio law upon a showing that a defendant acted with "actual malice," defined as "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio 1994) (citation omitted).

The jury weighed the evidence and concluded that Rom acted with actual malice. They did so after doing what we cannot—observing the testimony from Rom and Plaintiffs. The district court cited numerous evidentiary bases demonstrating, at minimum, that a reasonable juror could conclude Rom acted with actual malice, such as "target[ing] non-English-speaking investors, advertis[ing] near-impossible ROIs, and [selling] the investors seedy properties." (citations omitted). We will not disturb the jury's finding.

**F.**

*Attorney's Fees*. Rom argues that the district court abused its discretion on two grounds in awarding attorney's fees: (1) Plaintiffs' provided insufficiently detailed records for the district

court to rely on; and (2) the ratio between Plaintiffs' jury award ($148,549.41), on the one hand, and the attorney's fees ($371,865.59) and costs ($23,861.15), on the other, renders the award unreasonable.

We review the district court's award of attorney's fees for abuse of discretion. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 294 (6th Cir. 2016). We owe the trial court "substantial deference because the rationale for the award is predominantly fact-driven." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). Such deference is especially appropriate in this context given "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id*. (citation omitted).

There are two basic measures for evaluating the fairness of an attorney's award—"work done and results achieved." *Gascho*, 822 F.3d at 279. To determine the "work done," courts often employ the "lodestar approach," which multiplies the number of hours reasonably expended in litigation by a "reasonable hourly rate," *Bldg Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995), which the court can then, "within limits, adjust . . . to reflect relevant considerations peculiar to the subject litigation," *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). This is the method that the district court used to calculate Plaintiffs' attorney's fees. Plaintiffs originally requested $488,815.55 in fees. The district court reduced that amount by 25%, resulting in a fee award of $371,865.59.

In response to Rom's first argument, that Plaintiffs' counsel provided insufficiently detailed records in support of the hours they claimed to have worked, the district court found that the records were detailed enough to allow it to "determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."

The small sample of Plaintiffs' counsel's allegedly inadequate billing entries cited by Rom does not show that the district court abused its discretion. In fact, we have held that a district court's determination of attorney's fees was sufficiently detailed when the attorney claiming fees simply "averred under penalty of perjury that the hours expended and costs incurred in the litigation were reasonably necessary to prosecute the action." *Gascho*, 822 F.3d at 281. The district court in this case came to its conclusion on a much more detailed record than was provided in *Gascho*.

Rom's second argument is that the attorney's fees award is unreasonable in light of the degree of success obtained by Plaintiffs' counsel. "[A] fixed proportionality analysis that mathematically links the fee award to the damages award" is not required. *Dean v. F.P. Allega Concrete Const. Corp.*, 622 F. App'x 557, 560 (6th Cir. 2015). "What is required is that the district court offer a reasoned explanation that justifies the award and accounts for [Plaintiffs'] modest degree of success." *Id*.

Because the district court provided a reasoned explanation for the award, accounting for Plaintiffs' degree of success, we find no abuse of discretion. The district court gave a detailed explanation for attorneys' hourly rates, looking to the "rate that lawyers of comparable skill and experience can reasonably expect to command in the Cleveland area." (citation omitted). The district court reduced the attorney's fees in light of Plaintiffs' failed motions for preliminary injunction and class certification, and also to reflect the fact that one of Plaintiffs' counsel had not yet passed the bar. In addition to those specific reductions, the district court reduced the overall attorney's fees by 25% to reflect the fact that Plaintiffs were largely, but not entirely, successful. As the district court noted, "[t]he jury returned verdicts in the Plaintiffs' favor on all claims, and awarded the Plaintiffs punitive damages and attorney's fees. The Plaintiffs received $149,549.41

in damages and also kept their individual Properties." The district court also noted that the discrepancy between the original $5,000,000 demand and the jury award is explained by the fact that the original demand was presented when Plaintiffs' counsel thought they were going to be representing a 140-member class.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.